**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**UNITED COMMUNICATIONS, LTD., et al., Defendants.**

**Civ. A. No. 95–0400 (JR).**

United States District Court, District of Columbia.

Sept. 12, 1995.

Judith R. Starr, U.S. Securities and Exchange Commission, Division of Law Enforcement, Washington, DC, for Securities and Exchange Commission.

John A. Field III, McLean, VA, Daniel J. McGuan, Rockville, MD, for the Members Management Committee of Auburn–LLC.

Patrick C. Clary, Las Vegas, NV, Gene A. Bechtel, Bechtel & Cole, Chtd., Washington, DC, for Nevada Impound Management, Inc.

Judah Best, Debevoise & Plimpton, Washington, DC, for United Communications, Ltd., Greg E. Parker, Robert Palmarez, Omnivision of Dayton, and Interactive Communications Network, Inc.

Charles H. Carpenter, Pepper, Hamilton & Scheetz, Washington, DC, for PX Marketing, Inc. and Rodney J. Bonvicino.

## MEMORANDUM

ROBERTSON, District Judge.

On April 21, 1995, upon the consent and certain undertakings of defendants United Communications, Parker, Palmarez, Vargas, U.E.G., UCL–CC, and Omnivision of Dayton, I issued an order for permanent injunction and other equitable relief in this complex SEC enforcement action. That order provided, *inter alia*, that defendants United Communications, Parker and Palmarez would pay to a disgorgement fund, for the benefit of investors, such amounts as would be determined by agreement of the parties within 90 days.

No such agreement has been filed. Instead, the parties are struggling over the $675,855 proceeds of defendant Omnivision's sale, in May and June 1995, of the stock of a company called Cablemaxx. On June 29, 1995 the SEC filed an emergency motion to prohibit expenditures that would dissipate the proceeds of that sale. I authorized a number of specific payments totaling $243,-000 and ordered the rest of the proceeds frozen.[1]

Now before me are defendants' request to vacate the June 29 asset freeze order (or in the alternative to permit certain payments from the frozen funds) [# 73] and the SEC's motion to supplement the freeze order by requiring that defendants return certain of the Cablemaxx sale proceeds they spent without giving advance notice to the SEC [# 69].

The freeze order was issued on an emergency basis and should be continued in effect only if the SEC has established that the proceeds of the Cablemaxx stock sale are, in effect, the same funds that were unlawfully obtained from investors. Accordingly, I turn first to that issue.

### A. Traceability of proceeds from the sale of Cablemaxx stock.

■ The SEC asserts that the cash proceeds from the sale of Cablemaxx shares are traceable to investor funds acquired through a fraudulent telemarketing scheme in violation of federal securities laws. Although the unlawful acts have yet to be proven, the SEC appears to be correct as to traceability.

On January 8, 1993, defendant United Communications, Ltd. United Communications and Technivision, Inc. entered into a master agreement. United Communications

---

1. Subsequent orders authorized or overruled objections to additional payments totaling another $73,500.

agreed to form and capitalize a limited liability company and to pay Technivision $3 million raised from "members' contributions" to the limited liability company. In exchange, Technivision agreed (1) to grant the limited liability company a joint venture interest in the Corpus Christi super high frequency television system and (2) to grant United Communications an option to purchase up to 75 percent of the Salt Lake City super high frequency television system.

Thereafter, United Communications did form a limited liability company, UCL–CC, and did pay Technivision $3 million, generated from the sale of interests in either UCL–CC, or other limited liability companies. Upon payment of the $3 million, United Communications' option rights under the master agreement became exclusive, vested, and nonrevocable for a period of three years. Master Agreement ¶¶ 3.4, 7.3. In late 1993, United Communications assigned its option on the Salt Lake City system to Omnivision, Inc. Thereafter, in June 1994, Technivision and Omnivision sold their respective interests in the Salt Lake City system to Cablemaxx. As part of the sale, Cablemaxx made payment to Omnivision over an eight month period in cash and restricted stock. In May and June 1995, Omnivision sold its Cablemaxx shares and received the cash proceeds that are subject of the present dispute.

The United defendants assert that they spent none of the money raised from limited liability company investors to acquire or exercise the Salt Lake City option. They suggest that United Communications' promise to pay $3 million under the master agreement was consideration, not for the option on the Salt Lake City system, but solely for its interest in the Corpus Christi system. This argument is refuted by the master agreement, which provides in relevant part that:

> [t]he total purchase price payable by UCL, as nominee for the LLC, to [Technivision] for the Corpus Christi System/Market *and for the Options*[2] ("Corpus Christi Pur-

chase Price and Options Payment") shall be the sum of Three Million Dollars.... Master Agreement ¶ 3.1 (emphasis added). The agreement provides further that "[t]he Parties acknowledge that the source of payment of the Corpus Christi purchase Price *and Option Payment*, exclusive of certain initial monies, if any, shall be from the LLC." *Id.* ¶ 3.3 (emphasis added). Thus on the face of the master agreement, it is apparent that the payment of $3 million purchased both a joint venture interest in the Corpus Christi system and the Salt Lake City option. No record evidence is to the contrary.

The United defendants go on to point out that United Communications or its successor in interest, Omnivision, could have *exercised* the option on the Salt Lake City system only upon payment of an additional $3.5 million. But, obviously, it was not necessary to spend additional monies to sell the option. What United Communications, and later Omnivision, held was enforceable and evidently valuable option rights purchased with investor funds. Omnivision sold those rights to Cablemaxx and received the Cablemaxx shares in return. That chain of events ties the proceeds from Omnivision's sale of Cablemaxx shares to investor funds, at least sufficiently to proceed to the next two issues: Should the proceeds continue to be frozen? Should defendants be ordered to return portions of the proceeds already disbursed?

### B.  Continuation of the freeze order.

■ District courts have power to grant any proper form of ancillary relief necessary to effectuate the purpose of the securities statutes. *SEC v. Cherif*, 933 F.2d 403, 413–14 (7th Cir.1991), *modified*, June 7, 1991, *cert. denied*, 502 U.S. 1071, 112 S.Ct. 966, 117 L.Ed.2d 131 (1992). This equitable power is conferred by sections 20(b) and 22(a) of the Securities Act of 1933, 15 U.S.C. §§ 77t(b), 77v(a), and by section 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(e), and by now it is well established that the district courts have the power to use these

---

**2.** "Options" is defined in ¶ 1.1 of the master agreement, which provides in relevant part: "In addition to the foregoing, [Technivision] shall grant UCL certain options to purchase up to seventy-five percent (75%) of the assets of each Option System/Market as set forth hereinbelow ("Options")."

ancillary remedies to preserve assets. *See* Farrand, *Ancillary Remedies In SEC Civil Enforcement Suits,* 89 Harv.L.Rev. 1779, 1797–1800 (1976).

That authority, when combined with the finding of traceability, *supra,* is sufficient to support the continuation of the June 29 freeze order as to all the Cablemaxx sale proceeds that are still in bank accounts controlled by defendants Omnivision and Interactive Communications Network.

### C. Return of proceeds already disbursed.

The SEC wants more than continuation of the freeze order, however. It seeks the return (and payment to the UCL Disgorgement Fund Trustee) of $153,500. Of the original proceeds of the Cablemaxx sale, $675,855, expenditures of $316,500 have been approved: $243,000 for seven payments expressly approved by the freeze order of June 29; $65,000 for legal fees, the SEC's objection to which was overruled on June 30, 1995; and $8,500 approved by a consent order filed July 18, 1995. Although the rest of the money, $359,355, should be on deposit and frozen by the June 29 order, it appears that Omnivision has only $201,038 of the funds remaining from the Cablemaxx stock sale. The shortfall is $158,317. The SEC seeks the return of $125,000 transferred to an Omnivision payroll account on June 27, 1995, two days before the imposition of the freeze order, and $28,500 transferred to Interactive that was not the subject of any disbursement authorization.

According to materials submitted by the SEC (Exhibit D to the affidavit of Robert Besse), the $125,000 transferred to the Omnivision payroll account was, with two exceptions,[3] all disbursed in individual payments of less than $10,000. My order of March 3, 1995, provided, with certain exceptions, that payments of less than $10,000 could be made without advance notice to the SEC. Thus, absent any other indication of wrongful behavior, those disbursements, totaling substantially all of the $125,000 whose return the SEC now seeks, were not improper. The SEC argues, however, (a) that Omnivision's transfer of $125,000 from an operating account to a payroll account was itself a payment prohibited by the March 3 order; (b) that salary payments made to defendants Palmarez, Parker and Vargas totaled more than was permissible under the March 3 order; and (c) that, in any event, the Court should recognize and impose a constructive trust upon all the proceeds of the Cablemaxx stock sale and require that all of the money be returned, even by innocent non-parties. I cannot accept any of those three arguments.

a. Omnivision's transfer of funds from its general operating account to its payroll account did not violate the March 3 order. That order does apply on its face to "any sale, transfer, or other disposition of any assets," but I cannot construe the word "transfer" in that order to encompass the intra-corporate movement of money from an operating to a payroll account, especially where the order does contemplate the payment of salaries.[4]

b. It is not clear whether or not the payments to Palmarez, Parker and Vargas violated the March 3 order. The totals of the payments to the three defendants were greater than the amounts permitted to be made without notice as "monthly payments of compensation." Defendants assert that Palmarez, Parker and Vargas had not been paid any compensation for several months prior to the payments in question. The SEC argues that they were not entitled to compensation because Omnivision was defunct. The issue is not resolved on this record. The payments to these three defendants were made in unseemly haste, to be sure, and defendants obviously skated as close as possible to the edge of the March 3 order. The record does not inspire confidence in the defendants, but neither does it support an order requiring the immediate return of the

---

3. The exceptions are two checks to Bank One. See note 5, *infra.*

4. On March 1, 1995, before the parties came to agreement on and presented the terms of the order of March 3, 1995, I signed an interim order approving certain payroll distributions by Omnivision. I assume that the March 3 order, which was prepared by the parties, had among its purposes to avoid the need for Court approval of payroll disbursements.

funds. The SEC's claim for return of the salary payments to defendants is not extinguished by today's order denying the motion for their immediate return, however. Especially in the case of Palmarez and Parker, who have agreed to pay disgorgement in an amount yet to be negotiated, the monies they received from the Cablemaxx proceeds will presumably become a subject for the anticipated negotiation.

c. The remaining monies disbursed from the payroll account could be subject to a recovery order only if I were to recognize and impose the constructive trust argument adopted in *SEC v. Antar*, 831 F.Supp. 380, 402–03 (D.N.J.1993). The *Antar* decision imposed a constructive trust as a matter of New Jersey law. Neither party has suggested what the applicable state law would be in the instant case. In any event, it is open to question whether an order requiring non-parties to return portions of the Cablemaxx proceeds they received as payroll payments from Omnivision could be effectively enforced—at least without an additional expenditure of litigation resources that might well return only pyrrhic victories.[5]

■ I reach a different result with regard to the funds transferred to defendant Interactive that have not been approved for expenditure. The June 27 payment from Omnivision to Interactive was not an intra-company transfer, from an operating account to a payroll account, but rather a cash payment to a defendant, for which the March 3 order required notice. Because Omnivision's payment or transfer to Interactive was in violation of that March 3 order, defendant Interactive will be ordered to hold subject to the June 29 freeze order or to return to Omnivision the sum of $28,500.

### D. Use of Cablemaxx proceeds to pay attorneys' fees and other expenses.

United defendants move for leave to make payments from the Cablemaxx proceeds to pay $96,328 in legal fees to the firm of Hill, Held, Metzger, Lofgren & Peele.[6] It is doubtful that the United defendants have the right to spend investor money for services rendered by an attorney. *See, e.g., SEC v. Cherif, supra,* 933 F.2d at 417. But it is unnecessary to reach that question on this record: United defendants have made no showing that they cannot make the requested payments from exempt assets.

An appropriate order will issue with this memorandum.

### ORDER

For the reasons stated in a memorandum issued today it is this 12th day of September 1995 **ORDERED.**

1. The motion of defendants to vacate the freeze order issued June 29, 1995 or in the alternative to permit certain payments [# 73] is **denied.**

2. Defendant Interactive Communications Network, Inc., is ordered to hold pursuant to the freeze order issued June 29, 1995, or to return to defendant Omnivision, Inc., for holding pursuant to the freeze order, the sum of $28,500.

3. Except for the provisions of paragraph 2, the motion of the SEC to supplement the freeze order by requiring the return of certain sale proceeds [# 69] is **denied.**

---

5. I note that $40,885 of the payroll funds were paid to "Bank One # 75–2512566." Two of the checks issued on June 26, 1995, are for amounts greater than the $10,000 notice "trigger" established by the March 3 order. The record does not establish the purpose for which those payments were made. The SEC motion assumes that they were for taxes and FICA withholding. If that assumption is correct, the triggering of the March 3 order was only technical. Nevertheless,

if the SEC has a further motion with respect to those payments, I will entertain it.

6. United defendants have already paid $65,000, now shown to have been Cablemaxx proceeds, to Hill, Held, Metzger, Lofgren & Peele. It does not appear from the motions now before me, however, that the SEC seeks the return of these funds.