[637 NYS2d 880]

Black River Associates, Appellant, v Randy Newman, Respondent.

Fourth Department, February 2, 1996

274

APPEARANCES OF COUNSEL

*Sargent, Cramer & Myers,* Syracuse, for appellant.
*Steven C. Hirsch,* Garden City, for respondent.

## OPINION OF THE COURT

DENMAN, P. J.

In this action by plaintiff seeking specific performance of an agreement by defendant, a nondomiciliary, to purchase real property located in New York, we are called upon to decide whether, by entering into such agreement, defendant "transact[ed] any business" in New York (CPLR 302 [a] [1]), thus subjecting himself to the exercise of "long-arm" personal jurisdiction by a New York court. We conclude that defendant thereby transacted business in New York and thus is subject to suit in New York in a manner consistent with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

Plaintiff, Black River Associates, is a New York limited partnership that maintains its principal office in Franklin Lakes, New Jersey. Defendant, Randy Newman, is a California resident. In September 1994, defendant was solicited by Marvin Bakalar, a realtor, on behalf of plaintiff, which was seeking to sell real property in Liverpool, New York. The property currently serves as a post office under a long-term lease. All preliminary discussions and negotiations took place by mail, telephone, or telefax between Bakalar's office in Florida and defendant's office in California. On October 11, 1994, Bakalar telephoned defendant to advise him that plaintiff would accept his most recent offer. That same day, Bakalar faxed a letter confirming that understanding and inviting defendant to prepare a contract and send it to plaintiff at its New Jersey office.

On October 19, 1994, defendant executed a proposed contract of sale and mailed it to plaintiff's New Jersey office. On October 20, 1994, plaintiff accepted defendant's offer by executing the contract and returning it to defendant in California. The contract called for defendant to purchase the property for

$715,000, subject to the lease with the United States Postal Service. According to the contract, time was of the essence and the closing was to occur by November 7, 1994. The contract granted either party the right to bring legal action for specific performance in the event of the other party's breach. Pursuant to paragraph "O" of the contract, the parties agreed: "[I]n the event the Buyer or Seller herein are non-residents of the State of New York * * * then in that event each of the parties herein designates the Secretary of State of New York and appoints that Secretary of State as his duly designated Resident Agent for the purpose of accepting service for and in behalf of said Buyer or Seller, as the case may be, and * * * the terms and conditions of this Contract for Purchase and Sale shall be governed by the laws of the State of New York".

After receiving the executed contract, defendant made several telephone calls from California to Liverpool to ascertain whether the Postal Service would be renewing the lease. For reasons not disclosed by the record, defendant failed to tender the purchase price by the closing date in the contract, nor did he request an extension. Plaintiff then commenced this action, alleging breach of contract and requesting specific performance. The complaint was personally served upon defendant at his office in Beverly Hills. In lieu of answering, defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (8) on the ground that the court lacked personal jurisdiction over him. In his affidavit, defendant set forth the foregoing facts and averred: "At no time was I physically present in New York nor did I go to New York to inspect the Property. Moreover, I did not retain anyone on my behalf to inspect the Property in New York. The only communication I had with respect to the Property in New York, were [sic] several telephone calls to the United States Post Office occupying the Property to try to ascertain whether or not it would be renewing its lease for the Property. That is the only contact whatsoever I had with New York in connection with this entire transaction. Moreover, I did not have, nor ever have [sic], maintained an office, bank account, telephone listing or number, employed a salesman, solicited orders or made sales in the State of New York". Defendant argued that negotiating the purchase of the New York property over the telephone and through the mail was insufficient to subject him to suit in New York.

In opposition, counsel for plaintiff argued that defendant's agreement to purchase New York real property subjected defendant to long-arm jurisdiction under CPLR 302 (a) (1).

276

Supreme Court granted defendant's motion to dismiss the complaint for lack of personal jurisdiction. Plaintiff appeals, arguing that defendant, having contracted to purchase New York realty, is subject to suit in New York under CPLR 302 (a) (1), which, *inter alia,* permits long-arm jurisdiction over a nondomiciliary who "transacts any business within the state." Plaintiff's argument raises an issue of apparent first impression, as there is no New York case[1] directly on point. Moreover, there is only one tangential reference to the issue in a New York commentary *(see,* Siegel, NY Prac § 103, at 157 [2d ed]), which observes that a nondomiciliary's contract to buy New York land "may qualify as a transaction of New York business and thereby face personam jurisdiction under CPLR 302 (a) (1)". Professor Siegel cites no cases in support of that assertion. Thus, in determining whether New York may constitutionally assert jurisdiction over defendant, we shall examine the scope of the long-arm statute in light of its history and purpose.

Generally, prior to 1945, either the residence of a defendant within the State or personal service upon a defendant within the State was required before a court could constitutionally exercise personal jurisdiction over him *(see generally, Milliken v Meyer,* 311 US 457, *reh denied* 312 US 712; *Pennoyer v Neff,* 95 US 714). In the landmark case of *International Shoe Co. v Washington* (326 US 310, 316), the Supreme Court held that due process permits a State to exercise personal jurisdiction over a nonresident defendant served without the State provided that there are certain "minimum contacts" between defendant and the forum State and provided that the claim arises out of those contacts. The Supreme Court held, "[T]he privilege of

1. Several out-of-State cases discuss a nondomiciliary purchaser's amenability to long-arm jurisdiction under statutes akin to New York's CPLR 302 (a) (4). Those cases uniformly uphold the assertion of jurisdiction over the defendant based on defendant's acquisition of a vendee's interest in real property in the forum *(see, Bryan Mfg. Co. v Harris,* 459 NE2d 1199 [Ind App]; *Matter of Peterson v Ely,* 279 Ore 581, 569 P2d 1059; *Dwyer v District Ct.,* 188 Colo 41, 532 P2d 725; *Chadbourn, Inc. v Katz,* 285 NC 700, 208 SE2d 676; *cf., Hart v DeLowe Partners,* 147 Ga App 715, 250 SE2d 169; *McIntosh v Mid-State Homes,* 232 Ga 871, 209 SE2d 203; *Carmichael v Snyder,* 209 Va 451, 164 SE2d 703; *Associates Fin. Servs. v Kregel,* 550 P2d 992 [Okla App]; *see generally,* Annotation, *In Personam Jurisdiction—Nonresident,* 4 ALR4th 955, 970-974, § 6 [b]). One of those cases additionally upholds the assertion of jurisdiction over the nondomiciliary on the ground that entering into the realty purchase contract constitutes a transaction of business in the forum State under a statute akin to New York's CPLR 302 (a) (1) *(see, Matter of Peterson v Ely, supra; cf., Drew v Hooper* [appeal No. 2], 168 AD2d 903; *Tebedo v Nye,* 45 Misc 2d 222, 223).

conducting activities within a state * * * may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires [a party] to respond to a suit brought to enforce them can, in most instances, hardly be said to" violate due process (*International Shoe Co. v Washington, supra,* at 319). The Court stated: "Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure" (*International Shoe Co. v Washington, supra,* at 319).

Generally, a party subjects itself to long-arm jurisdiction consistent with " 'traditional notions of fair play and substantial justice' " (*International Shoe Co. v Washington, supra,* at 316) when it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (*Hanson v Denckla,* 357 US 235, 253, *reh denied* 358 US 858; *see, Asahi Metal Indus. Co. v Superior Ct.,* 480 US 102, 109; *Burger King Corp. v Rudzewicz,* 471 US 462, 474-475; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286, 297), or when it engages in purposeful activities directed at the forum State (*Burger King Corp. v Rudzewicz, supra,* at 475-476). One rationale for the "minimum contacts" standard is to prevent the individual States from overreaching the judicial limits appropriate to "their status as coequal sovereigns" (*World-Wide Volkswagen Corp. v Woodson, supra,* at 292). Thus, it is appropriate to analyze, in light of the contacts between the defendant, the claim, and the forum, the plaintiff's interest in obtaining relief, the interest of the forum State in asserting jurisdiction over the defendant in relation to the potential interests of other States in taking cognizance of the claim, and the shared interest of the several States in our Federal system in furthering their substantive social and economic policies and obtaining the most efficient resolution of controversies (*see, Asahi Metal Indus. Co. v Superior Ct., supra,* at 113, 115; *Burger King Corp. v Rudzewicz, supra,* at 476-477; *Keeton v Hustler Mag.,* 465 US 770, 775-778; *World-Wide Volkswagen Corp. v Woodson, supra,* at 292-294).

Another rationale for the "minimum contacts" standard is to protect a defendant from having to litigate in or be bound by the judgments of a distant or inconvenient "forum with which he has established no meaningful 'contacts, ties, or relations' " (*Burger King Corp. v Rudzewicz, supra,* at 472, quoting *International Shoe Co. v Washington, supra,* at 319; *see, World-*

*Wide Volkswagen Corp. v Woodson, supra,* at 291-292; *People v Concert Connection,* 211 AD2d 310, 314, *appeal dismissed* 86 NY2d 837). Due process requires that a defendant have adequate notice or " 'fair warning' " of the possibility of being sued in the forum State *(Burger King Corp. v Rudzewicz, supra,* at 472; *see, Keeton v Hustler Mag., supra,* at 781). Therefore, personal jurisdiction may be exercised over a defendant only when his "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there" *(World-Wide Volkswagen Corp. v Woodson, supra,* at 297). A defendant who purposefully directs his activities at the forum State *(see, Keeton v Hustler Mag., supra,* at 781) or who " 'purposefully avails [himself] of the privilege of conducting activities within the forum State' " can be said to have foreseen being sued there *(World-Wide Volkswagen Corp. v Woodson, supra,* at 297, quoting *Hanson v Denckla, supra,* at 253). Thus, "[s]o long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction even if not 'present' in that State" *(Kreutter v McFadden Oil Corp.,* 71 NY2d 460, 466, citing *McGee v International Life Ins. Co.,* 355 US 220, 222-223; *see, Burger King Corp. v Rudzewicz, supra,* at 475-476; *World-Wide Volkswagen Corp. v Woodson, supra,* at 297-298; *International Shoe Co. v Washington, supra,* at 319).

Pursuant to the Supreme Court's expansion of the power of States to obtain personal jurisdiction over a nondomiciliary, New York has enacted its long-arm statute, CPLR 302. With respect to a cause of action arising from the enumerated act, CPLR 302 (a) (1) permits the exercise of long-arm jurisdiction over any nondomiciliary who "transacts any business within the state." CPLR 302 (a) (1) is a " 'single act statute' " *(Kreutter v McFadden Oil Corp., supra,* at 467; *see generally, McGee v International Life Ins. Co., supra,* at 223), meaning that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted" *(Kreutter v McFadden Oil Corp., supra,* at 467; *see, Parke-Bernet Galleries v Franklyn,* 26 NY2d 13, 16).

Defendant never physically entered New York, and directed virtually all of his communications from his office in California either to plaintiff's office in New Jersey or plaintiff's agent's office in Florida. Further, the contract was not executed in New

York. Thus, we must determine whether there is a sufficient predicate for the exercise of long-arm jurisdiction—a sufficient transaction of any business within the State—based solely on the terms and effect of defendant's unperformed promise to purchase real property in New York. It is fundamental that a commercial transaction may cross State lines and touch two or more States *(see, World-Wide Volkswagen Corp. v Woodson, supra,* at 292-293, citing *McGee v International Life Ins. Co., supra,* at 222-223), and that a party may transact an "enormous volume of business" within a State without "ever entering it" *(Kreutter v McFadden Oil Co., supra,* at 466; *see, Parke-Bernet Galleries v Franklyn, supra,* at 17).

We conclude that, under the circumstances presented here, defendant's entering into a contract to purchase New York realty constitutes the transaction of business in New York, and that the interest of defendant as a contract vendee in New York property satisfies the "minimum contacts" test for maintenance of a suit to enforce that contract in New York. First, it is significant that defendant appointed the New York Secretary of State as his resident agent for service of process. Defendant thereby contemplated not only the possibility of being sued in New York, but the predictability of such suit[2] *(see, Burger King Corp. v Rudzewicz, supra,* at 472). The appointment of an agent in New York in connection with the contract, let alone an agent for receipt of process, probably constitutes a sufficient purposeful availment by defendant of New York privileges *(see, Republic of Argentina v Weltover, Inc.,* 504 US 607, 619-620; *Drew v Hooper,* 168 AD2d 903, *supra).* It is also significant, although not determinative *(see, Burger King Corp. v Rudzewicz, supra,* at 481-482), that the parties agreed that any dispute under the contract would be resolved under New York law. That choice of law provision, by which defendant availed himself of the protection of New York law, also indicates that defendant reasonably foresaw being sued in New York *(see, Burger King Corp. v Rudzewicz, supra,* at 481-482).

More fundamentally, we conclude that, by entering into a contract to purchase New York realty, defendant purposely

2. It could be argued that defendant expressly consented to suit in New York as a consequence of the contractual agency designation *(see, National Rental v Szukhent,* 375 US 311, 315; *see also, Burger King Corp. v Rudzewicz, supra,* at 472, n 14; *Insurance Corp. v Compagnie des Bauxites,* 456 US 694, 703-704; *The Bremen v Zapata Off-Shore Co.,* 407 US 1, 14-17; *see generally,* Siegel, NY Prac §§ 95, 98, at 145-146, 149-150), thereby establishing a jurisdictional basis under CPLR 301. Because plaintiff has not argued consent, however, we need not address the issue.

directed his activities towards New York. Obviously, the subject matter of the contract, the purchase of New York realty, has a substantial connection with the forum *(cf., McGee v International Life Ins. Co., supra,* at 223; *Thorpe v McCaffrey,* 157 AD2d 879, 881). That connection is magnified upon consideration of the "contemplated future consequences" of the agreement *(Burger King Corp. v Rudzewicz, supra,* at 479). By the terms or effect of the contract, defendant contemplated that either he or his agents would physically inspect the property in New York; take possession of the property in New York; record title and pay recording fees in New York; and hire agents or contractors to perform various related services in New York, e.g., an attorney, escrow agent, title insurer, and/or property insurer, all of whom would have to be qualified to do business (i.e., "be present") in New York. Additionally, defendant contemplated continued ownership, use, possession, and enjoyment of New York realty, continued payment of property taxes and assessments in New York, and a continued relationship with his New York tenant *(see, Genesee Scrap & Tin Baling Corp. v Lake Erie Bumper Plating Corp.,* 57 AD2d 1068, 1069; *Karrat v Merhib,* 62 Misc 2d 72, 73; *Tebedo v Nye,* 45 Misc 2d 222, 223, *supra; cf., Burger King Corp. v Rudzewicz, supra,* at 480). New York was thus the "place of performance" for defendant's "ultimate contractual obligations" *(Republic of Argentina v Weltover, Inc., supra,* at 619). "[W]ith respect to interstate contractual obligations * * * parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities" *(Burger King Corp. v Rudzewicz, supra,* at 473, quoting *Travelers Health Assn. v Virginia,* 339 US 643, 647; *see also, McGee v International Life Ins. Co., supra,* at 222-223; *Thorpe v McCaffrey, supra,* at 880). In our view, the totality of defendant's New York contacts creates a sufficient nexus between defendant, the transaction, and the forum State, and makes it reasonable for defendant to respond to suit in New York *(see, Burger King Corp. v Rudzewicz, supra,* at 480). This is not a case where defendant's connection with the forum State was the result of merely " 'random,' 'fortuitous,' or 'attenuated' contacts" *(Burger King Corp. v Rudzewicz, supra,* at 475, citing *Keeton v Hustler Mag., supra,* at 774; *World-Wide Volkswagen Corp. v Woodson, supra,* at 299), or the "unilateral activity" of others *(Helicopteros Nacionales v Hall,* 466 US 408, 417; *see, Kulko v California Superior Ct.,* 436 US 84, 93, *reh*

*denied* 438 US 908; *Hanson v Denckla, supra,* at 253). Apart from the mere fortuity that it was negotiated and executed elsewhere, every incident of the contract was "New York-connected" *(Hi Fashion Wigs v Hammond Adv.,* 32 NY2d 583, 587).

Moreover, by acquiring a contractual interest in the real property, defendant availed himself of various privileges of owning property in New York, including the considerable benefits of New York law and the protections of the New York judicial system. Upon execution of the contract, defendant became vested with a recordable legal interest *(see,* Real Property Law § 294) and an enforceable equitable interest in the real property.[3] Having acquired that interest, defendant was entitled to enjoy any appreciation in its value, to insure or encumber it, and to convey it by sale, gift, bequest, or intestate succession, all pursuant to and under the protection of New York law. More persuasively, if the seller had defaulted under the contract, defendant doubtless could have claimed the benefit of his contractual interest under New York law and sued for damages or specific performance in New York. Conversely, defendant in that event probably could not have sued the seller in California, where defendant seeks to compel the seller to sue him. Similarly, based on his acquisition of a contractual interest in New York property, defendant could have availed himself of the protection of New York law and its judicial machinery in the event of a dispute with third parties in various matters concerning, for example, priority of title, boundaries, or zoning.

The availability of that legal framework relating to real property ownership, and of the administrative and judicial machinery for enforcement of such laws, demonstrates New York's overwhelming substantive interest in asserting personal jurisdiction over nondomiciliary buyers, to the exclusion of other States. The stability of real estate ownership is of vital concern to the situs State, and consequently each State has a "manifest interest" in providing a convenient forum for its

---

3. In light of defendant's acquisition of an enforceable interest as vendee, it could be argued that defendant became subject to New York jurisdiction over this claim arising out of his "own[ership]" or "use[ ]" of "real property situated within the state" (CPLR 302 [a] [4]; *see also,* cases cited in n 1, *supra; see generally,* Siegel, NY Prac §§ 89, 103, at 141, 157 [2d ed]; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 302.16). Inasmuch as plaintiff does not make that argument, however, we need not address that question.

citizens in actions to enforce contracts for the purchase of real property situated within that State *(cf., Burger King Corp. v Rudzewicz, supra,* at 473-474). In this case, the substantive interests of New York in the real estate transaction are exceedingly heavy, and the interest of other States, such as California, are slight or nonexistent *(cf., Asahi Metal Indus. Co. v Superior Ct., supra,* at 114).

Important practical and procedural reasons also support the situs State's interest in providing redress for a resident seller of real estate against a nonresident buyer. Newman's defense of the action and justification for nonperformance of the purchase contract might involve such issues as the quality of title, the existence of a boundary dispute, or the physical condition of the property. In order to decide such issues, it might be necessary for the court to review local land records or inspect the property in New York, tasks that may be inconvenient for an out-of-State court, if not impossible. Further, with respect to those potential defenses, any nonparty lay or expert witnesses are likely to reside in New York. Of course, under the terms of the contract, any court hearing the case would apply New York law. Consequently, New York's procedural interests are weighty in relation to the very slight interests of other forums *(see, Asahi Metal Indus. Co. v Superior Ct., supra,* at 114), signifying that it is not fundamentally unfair to subject defendant to jurisdiction in New York *(cf., Burger King Corp. v Rudzewicz, supra,* at 478-487). Indeed, under these circumstances, it would be unfair to allow defendant to escape accountability in New York for his alleged breach, and to force plaintiff to sue defendant in California, with which neither plaintiff nor its claim has any connection *(cf., Burger King Corp.v Rudzewicz, supra,* at 473-474).

Gauging the quality and nature of defendant's contemplated activities in and contacts with New York, in light of defendant's reasonable expectation of being sued here and, further, in light of the compelling interest of New York in "the fair and orderly administration" of its laws and system of real property ownership *(International Shoe Co. v Washington, supra,* at 319), we conclude that defendant transacted business in New York. Defendant thus is subject to suit in this forum in a manner consistent with due process.

Accordingly, the order on appeal should be reversed, the motion to dismiss denied, and the complaint reinstated.

Lawton, Wesley, Balio and Davis, JJ., concur.

Order unanimously reversed, on the law, with costs, motion denied, and complaint reinstated.