## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

## CURRENT FINANCIAL SERVICES, et al., Defendants.

### No. Civ.A. 91–3089 SSH.

United States District Court, District of Columbia.

July 27, 1999.

Mark Alan Adler, SEC, Washington, DC, for plaintiff.

John D. Wogan, New Orleans, LA, for Receiver for Current Financial, Inc.

David W. Benner American Equity Financial Group, Latrobe, PA, pro se.

Douglas R. Rayburn, and Current Financial Services of Mississippi, Inc., c/o Douglas R. Rayburn, Jayess, MS, pro se.

### MEMORANDUM OPINION

STANLEY S. HARRIS, District Judge.

Before the Court is defendant Douglas R. Rayburn's ("Rayburn") Motion For Release of Funds in order to retain legal counsel for defendant Current Financial Services of Mississippi, Inc. ("CFSM").[1]

---

1. This Memorandum Opinion does not address Rayburn's and CFSM's "Motion For Discharge From Civil Action and the Release of Assets of Current Financial Services of Mississippi," filed on June 18, 1998. Liberal-

ly construing that "motion," which was substantively a denial of liability, the Court treats it as an opposition to plaintiff's motion for summary judgment. Plaintiff also considered the "motion" as an opposition, and accord-

Upon consideration of the entire record, the Court denies Rayburn's motion.

On December 5, 1991, the Court issued a temporary restraining order and asset freeze against Rayburn and CFSM. On February 13, 1992, the Court entered a Preliminary Injunction and Order for the Freezing of Assets and Other Relief, with Rayburn's and CFSM's consent. Rayburn's motion requests that a portion of the frozen funds now be released to obtain legal counsel for CFSM.

Liberally construing Rayburn's *pro se* submissions, *see Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the Court identifies two principal arguments that Rayburn makes. First, Rayburn argues that the asset freeze denies CFSM's constitutional right to counsel. Second, Rayburn alleges that at least half of the funds deposited in his frozen account at Pike County National Bank were personal funds, and therefore, those personal funds should be released to him.[2] The Court rejects both of Rayburn's arguments.

■ First, Rayburn contends that CFSM has a constitutional right to counsel and that the asset freeze violates that right. However, the Sixth Amendment provides defendants the right to counsel only in criminal, not civil, proceedings.

*See Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *FTC v. Osborne*, 69 F.3d 543, 1995 WL 635169 (9th Cir.1995). Even in a criminal case, the Supreme Court has upheld the constitutionality of freezing a defendant's assets and precluding their use for payment of attorney's fees. *See United States v. Monsanto*, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2667, 105 L.Ed.2d 528 (1989). "It would be anomalous to hold that a civil litigant has any superior right to counsel than one who stands accused of a crime." *SEC v. Cherif*, 933 F.2d 403, 416 (7th Cir.1991); *see SEC v. Coates*, 1994 WL 455558 at *3 (S.D.N.Y. Aug.23, 1994). Thus, Rayburn's constitutional argument fails.

Second, Rayburn contends that a portion of his frozen assets represents personal funds, not funds that are traceable to investor funds acquired through a "ponzi scheme." Rayburn submits several loan documents and a contract for collections services purporting to show that funds from these sources are unrelated to the alleged fraud.

■ The Court finds his evidence insufficient to support a release of funds. Dis-

ingly filed a reply memorandum, to which Rayburn filed a surreply. Rayburn's surreply did not object to plaintiff's characterization of his "motion" as an opposition to summary judgment.

2. Rayburn also argues that "said actions of Plaintiff violate the Fourteenth Amendment right to equal protection under the law." Def's Rep. to Opp. to Mot. for Release of Funds, ¶ 12. However, Rayburn does not specify which actions allegedly violate the Fourteenth Amendment's Equal Protection Clause or how such actions allegedly violate the Equal Protection Clause. The Court therefore is unable to evaluate the merits of Rayburn's allegation.

Additionally, in his reply to plaintiff's opposition, Rayburn requests that the funds at issue be interpleaded pursuant to Fed.R.Civ.P. 22. The Court denies Rayburn's request for interpleader because interpleader is not appropriate in this situation. "Where a party in control of contested property, the stakeholder, makes no claim on the property and is willing to release it to the rightful claimant, interpleader allows him 'to put the money or other property in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court.'" *Commercial Union Insurance Co. v. United States*, 999 F.2d 581, 583 (D.C.Cir.1993) (citing Zechariah Chaffee, Jr., The Federal Interpleader Act of 1936 1, 45 Yale L.J. 963, 963 (1936)). This description indicates that Rayburn is not the stakeholder, but a claimant, and thus, he is not the proper party to request interpleader. Regardless, Rayburn need not resort to an interpleader action to obtain a determination on whether he is entitled to a portion of his frozen assets because the Court will make such a determination by ruling on this motion.

trict courts have the equitable power to use ancillary remedies to preserve assets, as conferred by Sections 20(b) and 22(a) of the Securities Act of 1933, 15 U.S.C. §§ 77t(b), 77v(a), and by Section 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(e). *See SEC v. United Communications*, 899 F.Supp. 9, 11–12 (D.D.C. 1995). "It has been specifically recognized that a freeze of assets may be appropriate to assure compensation to those who are victims of a securities fraud." *SEC v. General Refractories Co.*, 400 F.Supp. 1248, 1260 (D.D.C.1975). *See* Michael T. Prior, Comment, SEC v. Unifund SAL: A Thaw in the SEC's Use of the Asset Freeze To Prosecute Offshore Fraud, 17 Brook. J. Int'l. L. 665, 671 (1991) ("An asset freeze order has the immediate effect of preserving a fund for any potential recovery . . . .").

To ensure compensation to the victims in this case, the Court finds it reasonable to maintain the freeze order because plaintiff has demonstrated that the potential disgorgement it could receive in this case far exceeds the amount that is frozen in the account. *See SEC v. Grossman*, 887 F.Supp. 649, 661 (S.D.N.Y.1995) ("it is irrelevant whether the funds affected by the Asset Freeze are traceable to the illegal activity"). Plaintiff has calculated that a reasonable approximation of Rayburn's and CFSM's profits is $156,997.28, which does not include prejudgment interest and penalties that may be awarded. Pl.'s Surrep. at 4. Approximately $44,000 is currently frozen in CFSM's account. The frozen assets clearly do not exceed plaintiff's approximation of liability, and thus, the Court will continue the freeze order. *See SEC v. Bremont*, 954 F.Supp. 726, 733 (S.D.N.Y.1997).

Even if the circumstances required that only funds traceable to the fraud be frozen, Rayburn has not persuaded the Court that the frozen account contains personal funds. *See Coates*, 1994 WL 455558 at *4 (requiring a hearing to determine the extent to which defendants' personal assets are traceable to the alleged fraud). Nearly all of Rayburn's supporting documentation is inconclusive, or even detrimental, as to his claim that the frozen account contains personal funds. Rayburn submits documents regarding two personal loans he took from Pike National Bank, arguing that proceeds from these loans were improperly frozen. However, the documents regarding the first loan, taken out on October 11, 1991, clearly indicate on their face that the entire loan amount of $7,864.77 was paid directly to General Motors Acceptance Corporation ("GMAC"). *See* Ex. B. to Def.'s Rep., "Itemization of Amount Financed" for Loan # 8266113. The documents regarding the second loan, taken out on February 18, 1992, clearly indicate on their face that the entire loan amount of $7,587.87 was used to pay off the first loan. *See* Ex. B to Def.'s Rep., "Itemization of Amount Financed" for Loan # 8275738.[3] Thus, these documents do not support Rayburn's claim of personal funds in the frozen account.

Rayburn also submits documents for a $10,279.08 promissory note, issued November 26, 1990, although he does not make any reference to this note in his motion. However, this note was made to Academy Financial Services of Mississippi (the former name of CFSM), not Rayburn personally. As plaintiff points out, Rayburn's deposition indicated that those funds were subsequently used by CFSM. *See* Ex. 2 at 62–66, Hunter Dec. to Pl.'s Surrep. These documents do not support Rayburn's claim that the frozen funds contain personal assets.

Finally, Rayburn submits a contract, effective June 18, 1991, to provide collection services to Dillon's Medical Clinic, arguing that the proceeds are improperly frozen in the CFSM account. The Court finds that

---

**3.** Even if the documents were relevant, they are not signed, thereby leaving open the question of their authenticity.

this contract similarly does not justify a release of funds from the frozen account. The contract is between Dr. Dillon and CFSM, not Rayburn personally, and the Court's Freeze Order covers all funds "under the direct or indirect control of defendant CFSM." Order, Feb. 13, 1992; at ¶ IV; Order, Dec. 5, 1991, at ¶ IV. Furthermore, Rayburn's motion does not indicate how much money received from this collection contract remained in the account at the time it was frozen on December 5, 1991. Plaintiff's surreply, however, clarifies any question as to the amount of profits received from these services. Plaintiff indicates that, in a November 1992 deposition, Rayburn stated that CFSM made a profit of approximately $4,750, and that CFSM's records, as provided by defendants to plaintiff, indicate that approximately $4,500 was deposited into the CFSM accounts in August and September 1991, while an additional $1,000 was deposited in January 1992. *See* Pl.'s Surrep. at 6. Plaintiff argues that the $4,500 was so commingled with CFSM's investor activities that Rayburn cannot show that these funds presently represent personal funds. *See SEC v. Glauberman,* 1992 WL 175270 at *2 (S.D.N.Y.1992) (funds in question were deposited either at the time when defendant was making insider profits or when he knew the SEC was on his trail, and "when [defendant's] total disgorgement liability exceeds his net worth, he cannot take refuge in having commingled his profits with other personal funds...."). The $1,000, however, was deposited after CFSM's and Rayburn's investor activities were enjoined, and plaintiff admits that these funds arguably may not represent investor funds; however, the amount of money defrauded from the investors heavily outweighs the amount of money in the frozen account, and therefore, the Court finds it irrelevant that the funds are not traceable to investor funds.

The Court finds that Rayburn is not entitled to a release of funds for attorney's fees. "A defendant is not entitled to foot his legal bill with funds that are tainted by his fraud." *Coates,* 1994 WL 455558 at *3. *See also SEC v. Quinn,* 997 F.2d 287, 289 (7th Cir.1993) ("Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime."); *Bremont,* 954 F.Supp. at 733. Accordingly, the Court denies Rayburn's motion.

The Court also notes on June 1, 1998, plaintiff filed a motion for summary judgment against several defendants, including Rayburn and CFSM. Although Rayburn, who is proceeding *pro se,* submitted an opposition to plaintiff's motion for summary judgment on behalf of himself and CFSM, corporations may not proceed *pro se,* and the Court's October 27, 1998, Order called upon CFSM to obtain legal counsel. In response, Rayburn filed this Motion for Release of Funds. Because the Court denies the motion, the Court reminds Rayburn of CFSM's obligation to obtain legal counsel and submit an opposition to plaintiff's motion within 30 days of the date of this Order, or the Court will treat plaintiff's motion as to CFSM as conceded.

An appropriate Order accompanies this Memorandum Opinion.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it hereby is ORDERED, that defendant Douglas R. Rayburn's motion is denied. It hereby further is

ORDERED, that defendant Current Financial Services of Mississippi (CFSM) shall obtain legal counsel and submit an opposition to plaintiff's motion for summary judgment within 30 days of the date of this Order, or plaintiff's motion shall be treated as conceded as to CFSM.

SO ORDERED.