**SALOMON SMITH BARNEY, INC., Plaintiff,**

v.

**Michael E. McDONNELL, as Trustee of the Cornell Trust U/A/D 2/14/01, & Securities and Exchange Commission, Defendants.**

No. 01 Civ. 2874(RO).

United States District Court, S.D. New York.

June 19, 2001.

David J. Libowsky, Bressler, Amery & Ross, New York City, for plaintiff.

Judith R. Starr, Alistaire Bambach, United States Securities & Exchange Commission, Washington, DC, for defendant.

Lawrence E. Bathgate, II, Bathgate, Wegener & Wolf, Lakewood, NJ, for defendant Michael E. McDonnell, as Trustee of the Cornell Trust.

Val Mandell, for Christopher Brennan.

*OPINION & ORDER*

OWEN, District Judge.

On June 19, 1995, this Court found Robert E. Brennan (hereafter, for obvious purposes of differentiation in this opinion, referred to as "Brennan, Sr.") liable for having perpetrated a "massive and continuing fraud" on thousands of brokerage customers, *see SEC v. First Jersey Securities, Inc.*, 890 F.Supp. 1185 (S.D.N.Y.1995), *aff'd*, 101 F.3d 1450 (2d Cir.1996), *cert. denied*, 522 U.S. 812, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997), and ordered him to disgorge approximately $75 million into the Court's Registry for the benefit of the defrauded investors. The disgorgement order "left the SEC as [Brennan, Sr.'s] largest unsecured creditor." *In re First Jersey Securities, Inc.*, 180 F.3d 504, 506 (3d Cir. 1999). On August 7, 1995, a little more than a month after the judgment, Brennan, Sr. filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of New Jersey, declaring in his schedules $90,110,156 in assets as against $85,640,452 in liabilities apportioned quite unevenly (mainly with the SEC) between fifteen creditors holding unsecured nonpriority claims.[1]

Since the entry of judgment, the SEC has been diligently attempting to protect the eventual enforcement of its judgment in and out of the New Jersey Bankruptcy Court and the High Court of St. Kitts and Nevis. Brennan, Sr. has repeatedly invoked the Fifth Amendment as to inquiries regarding his various pecuniary interests. Eventually, the SEC, putting before me evidence of its discovery of substantial Brennan, Sr. assets elsewhere, moved by order to show cause why he should not be held in civil contempt of the 1995 judgment and disgorgement order. In order to maintain the status quo, I entered an order, dated April 5, 2000, freezing Brennan, Sr.'s assets that were not part of the bankruptcy estate. The April 2000 order states in relevant part:

---

1. The "Summary of Schedules" page enclosed with Brennan, Sr.'s Chapter 11 petition listed under assets $1,750,000 in real property and $88,360,156 in personal property. The personal property included, among other things, $75,938,447 in stock and interests in incorporat-ed and unincorporated businesses, $5,854,747 in interests in partnerships of joint ventures, $10,000 in cash on hand, $65,000 in household goods in Florida and New Jersey and $25,000 in books and pictures.

[A]ny financial or brokerage institution or other person or entity located within the United States courts and holding any funds or other asset in the name, for the benefit or under the control of defendant Robert E. Brennan [Sr.] that are not property of his bankruptcy estate, and which receives actual notice of this Order, shall hold and retain within its control and prohibit the withdrawal, removal, transfer or other disposal of any such finds or other assets....

Other relief imposed in connection with the April 2000 order was the subject of an appeal to the Second Circuit, but the asset freeze provision above has, at all times since its entry, remained in effect and power and jurisdiction to issue it have been clearly established by the Bankruptcy Court for the District of New Jersey when it lifted the automatic stay with respect to enforcement of the SEC's judgment against non-estate Brennan, Sr. assets on May 7, 2001.

This present separate, but related, action concerns the April 2000 order and, specifically, conflicting claims to certain assets coming to light in a brokerage account with plaintiff Salomon Smith Barney ("SSB"). The background is as follows. On or about February 15, 2001, defendant Michael E. McDonnell, as Trustee of the Cornell Trust U/A/D 2/14/01, opened the SSB brokerage account on behalf of the Trust, which Robert E. Brennan, Jr. (hereafter Brennan, Jr.), designating himself as "grantor" and a beneficiary, created pursuant to the terms of a Grantor Trust Agreement dated February 14, 2001. It appears (oddly) to have been funded one day prior to its creation by stock transferred from an irrevocable life insurance trust Brennan, Sr. had established in 1981. Brennan, Jr., in an affidavit submitted in connection with defendant McDonnell's papers, states that the 1981 life insurance trust (also called the "Brennan Family Trust") was created by Brennan, Sr., as the grantor, and Ronald J. Riccio, Esq., as the Trustee.

Brennan, Jr. states that the Brennan Family Trust was established as a vehicle for Brennan, Sr. to transfer ownership of certain life insurance policies and to manage and distribute income and proceeds generated from said policies, disbursements to be made:

[t]o provide for the care, maintenance, support and education ... of the Grantor's [Brennan, Sr.] father, [brother], and/or the Grantor's issue ... as well as for any expenses incurred ... because of any illness, operation, infirmity, emergency, or for such other purposes ... [the Trustee] shall deem to be in the best interests of the Grantor's father, said brother and/or the Grantor's issue.

The circumstances of this sudden disbursement of funds from the Brennan Family Trust are also somewhat curious. Brennan, Jr. states that he had "[n]ot been able during the recent past to earn a sufficient amount of income to cover all of [his] household and other expenses and to otherwise maintain [his] lifestyle" and therefore corresponded "with the successor Trustee" of the Brennan Family Trust seeking the "maximum possible distribution." See Affidavit of Robert E. Brennan, Jr., sworn to April 12, 2001, at ¶ 5. Brennan, Jr. did not note that Riccio, trustee of twenty years to the 1981 insurance trust, abruptly resigned on February 1, 2001 and Brennan, Sr.'s brother Henry F. Brennan III became the trustee. All of these events occurred during the recent pendency of Brennan, Sr.'s criminal bankruptcy fraud case in the District of New Jersey, in which he was convicted a month later (this last April) on seven counts of bankruptcy fraud and money laundering. In any event, on February 13, 2001, one day before the creation of the Cornell Trust by Brennan, Jr., Henry Brennan as trustee of the 1981 Brennan Family Trust authorized the transfer of Allmerica Financial Corporation stock from that trust to the Cornell Trust.[2] McDonnell, as Trustee for the Cornell Trust, ordered the sale of the shares two days later, resulting in proceeds of approximately $1,183,589. Twelve days later, February 27, the *first* two checks written were made payable to Michael Critchley, Esq., Brennan, *Sr.'s* criminal coun-

---

2. The Allmerica stock in the Brennan Family Trust was the result of the demutalization of another insurance entity, State Mutual Life Assurance of America, in or about 1995 which became Allmerica and issued shares to prior policy holders.

sel in New Jersey, in the amount of $200,000 (one check for $150,000 and the other for $50,000); the tenth listed check to Ultimate Limousine, in the amount of $2,031.95, was for Brennan, Sr.'s "related transportation expenses." *See* Brennan Jr. Aff. at ¶ 7.

In the period before me, in comparison to the $202,031.95 in payments made for Brennan, Sr.'s benefit, Brennan Jr.'s checks on the SSB account for general personal expenses in late February and March 2001 were less than $40,000. Evidence of Brennan, Jr.'s purported personal living expenses (which he says occasioned Henry Brennan's distribution of funds from the Brennan Family Trust to Brennan, Jr.), include, among other things, two $5,000 checks to American Express, $1,500 to Columbia Propane, approximately $2,500 in Brennan, Jr. legal fees, $7,500 to Citibank, and a $500 check to Bell South (presumably a phone bill). With respect to the $200,000 payment to Critchley, Brennan, Jr. states:

> My decision to provide financial assistance to my father with respect to his outstanding legal fees was my own. I therefore requested that Mr. McDonnell make such payments. It is only natural and appropriate that I desired to provide financial assistance on behalf of my father so that he could continue to be represented by counsel in a pending criminal matter. I would do the same for my wife, my children or any other close family member of close friend. My father had no control over the funds advanced to cover his legal fees and related transportation expenses.

Brennan, Jr. Aff., at ¶ 11.

The SEC, learning of the above, thereafter advised SSB by letter of the April 2000 asset freeze order which froze the account accordingly. Counsel for the Cornell Trust remonstrated to SSB that the account should not be frozen. SSB, caught between competing claims to the brokerage account and wishing to avoid any violation of this Court's order, filed this interpleader action on April 5, 2001 naming the SEC and the Cornell Trust as defendants.

At an initial hearing on this matter, the following additional facts were brought to the Court's attention. First, Christopher Brennan, estranged son of Brennan, Sr., appeared through counsel, Val Mandell, Esq., and informed the Court that Christopher Brennan, apparently a beneficiary of the 1981 life insurance trust, wishes to assert a claim in this interpleader action and may file a claim for conversion in New Jersey. Second, the State of New Jersey, which has placed levies on known non-estate assets of Brennan, Sr., advised SSB by letter dated April 16, 2001 that it will also assert a claim against the Cornell Trust. Third, counsel to Donald F. Conway, the Chapter 11 Trustee for the bankruptcy estate of Brennan, Sr., submitted a letter to the Court stating that the Trustee does not consider the SSB brokerage account to be property of the bankruptcy estate. Some time after the initial hearing, on May 7, 2001, the United States Bankruptcy Court for District of New Jersey lifted the automatic stay to permit the SEC "[t]o enforce its judgment against assets of the Debtor [Brennan] that are not property of the bankruptcy estate, nor claimed by the Chapter 11 Trustee on behalf of the estate, and to take all acts necessary to effectuate such enforcement, including but not limited to assertion of a claim in that certain interpleader action known as *Salomon Smith Barney, Inc. v. McDonnell, et al.*, No. 01 Civ. 2874 (S.D.N.Y.)...."

■ Interpleader actions generally proceed in two stages. First, the Court determines whether the plaintiff stakeholder, here SSB, is entitled to the relief sought. *See Pennsylvania Ins. Co. v. Long Island Marine Supply Corp.*, 229 F.Supp. 186, 188 (S.D.N.Y.1964). Second, the Court adjudicates the adverse claims of the interpleaded defendants. *See id.* Under Fed.R.Civ.P. 22(1), interpleader is proper if the party requesting it "[i]s or may be exposed to double or multiple liability." Interpleader is rooted in equity and a "[h]andy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund." *Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir.1993). "Accordingly, what triggers interpleader is a real and reasonable fear of double liability of vexatious, conflicting claims." *Id.* (internal quotes and cite omitted). Courts have long recognized that

the remedy of interpleader should be liberally granted. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967); *Ashton v. Josephine Bay Paul & C. Mickael Paul Found., Inc.*, 918 F.2d 1065, 1069 (2d Cir.1990).

■ Rule 22 interpleader is appropriate in this matter. SSB is currently subject to conflicting claims from the SEC, the State of New Jersey, Christopher Brennan and Trustee of the Cornell Trust, all claiming entitlement in some form to the same funds in the SSB brokerage account. SSB should not be forced to decide the superior claim since this determination is best left to the Court. Moreover, SSB is not only in the position of being forced to decide the superior claim, but is on notice that any disbursement of funds from the brokerage account may, in the opinion of the SEC, constitute a violation of this Court's April 5, 2000 order.

The Trustee of the Cornell Trust, however, moves to dismiss this action pursuant to Fed. R.Civ.P. 12 for lack of subject matter jurisdiction, lack of personal jurisdiction over McDonnell and the Trust, improper venue and insufficiency of service of process. I am unpersuaded.

■ Subject matter jurisdiction exists in this action under 28 U.S.C. § 1331, concerning a federal question. The federal question before me is vindication of the $75 million disgorgement judgment entered against Brennan, Sr. in July 1995. This judgment, as well as the asset freeze order of April 2000 issued in connection with the order of disgorgement, create the SEC's cause of action and claim of entitlement to the funds in the SSB brokerage account.[3] *See SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103–1104 (2d Cir.1972) (discussing general equity powers of district courts with respect to federal disgorgement judgments and other ancillary relief under the securities laws);[4] *SEC v. AMX International, Inc.*, 7 F.3d 71, 74–75 (5th Cir.1993); *Amoco Production Co. v. Aspen Group*, 8 F.Supp.2d 1249, 1253 (D.Colo. 1998); *Blackmon Auctions, Inc. v. Van Buren Truck Center, Inc.*, 901 F.Supp. 287, 293 (W.D.Ark.1995). Further, a federal question exists if the complaint states a federal claim that provides legal entitlement to a remedy because, as Justice Holmes noted, "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). SSB has pled on the face of a well-pleaded complaint that its interpleader action for relief arises out of this Court's April 2000 order, a Federal court order issued in relation to a federal disgorgement judgment entered for violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934. *See Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (holding federal question exists where suit requires resolution of a substantial question of federal law).[5] Final-

---

**3.** *See also SEC v. Current Fin. Servs.*, 62 F.Supp.2d 66, 68 (D.D.C.1999) ("It has been specifically recognized that a freeze of assets may be appropriate to assure compensation to those who are victims of a securities fraud." (internal cite omitted)).

**4.** In *Manor Nursing*, the Second Circuit noted, "[i]t is for the federal courts to adjust their remedies so as to grant the necessary relief where federally secured rights are invaded." *Id.* at 1103 (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)). The Court of Appeals affirmed the district court's finding that defendants had carried out a fraudulent public offering, order of disgorgement and imposition of a temporary asset freeze until such time as the defendants paid over the proceeds to a trustee who had been appointed to assist in the court-ordered restitution of the funds to the stock purchasers. *See id.* at 1103–1104, 1106.

**5.** *Franchise Tax Bd.* is instructive considering the arguments before me. Counsel for McDonnell and the Cornell Trust argues that this interpleader action really involves questions of New Jersey trust law. This may be true in some respects, but similar claims were made and rejected in *Franchise Tax Bd.* and *Clark*. The Supreme Court held, "Even though state law creates [a party's] cause of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841. While certain issues of New Jersey trust law may permeate this interpleader action, the issue squarely before me is the applicability of the April 2000 asset freeze order and the 1995 disgorgement judgment.

ly, an interpleader plaintiff, here SSB, may invoke federal question jurisdiction based on a defense to a claim that would raise a federal question if an interpleader defendant, such as the SEC here, could assert a claim to the stake in a coercive action, that is, an action seeking affirmative relief from the interpleader plaintiff.[6] *See Commerical Union Ins. Co. v. United States,* 999 F.2d 581, 585–586 (D.C.Cir.1993) (holding that claim of defendant United States against interpleader fund was based on federal law and federal question jurisdiction would therefore have existed in coercive action by defendant United States). Indeed, the SEC has previously instituted a coercive action in this Court arising out of the April 5, 2000 asset freeze order against MJQ Corporation, a non-party to the *SEC v. Brennan,* 85 Civ. 8585(RO), enforcement action, claiming that Brennan, Sr. had a beneficial interest of approximately $12 million in a cruise ship nominally owned and operated by MJQ. Jurisdiction under 28 U.S.C. § 1331 is therefore proper.

 McDonnell and the Cornell Trust further contend that this action must be dismissed for lack of personal jurisdiction. I disagree. The determination of whether this Court has personal jurisdiction over the defendants is a two step process. First, one must look to the law of the forum state to determine whether the exercise of personal jurisdiction is appropriate. If it is, then one must assess whether such exercise of jurisdiction "comports with the requisites of due process." *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997). New York's long-arm statute, CPLR 302(a)(1), states, "A court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state." It is well-settled that CPLR 302(a)(1) is a "single-act" statute, meaning that "proof of one transaction in New York is sufficient to invoke jurisdiction [under 302(a)(1)], even though the

defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1109 (2d Cir.1997) (quoting *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988)).

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the facts articulated in the well-pleaded complaint, attachments and affidavits are construed in the light most favorable to the plaintiff. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). A plaintiff need only make out a prima facie showing that personal jurisdiction exists to survive a motion to dismiss. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). SSB, through its verified complaint and the declaration of Frank Pagnotta, SSB's Senior Vice President, sets forth several bases showing that McDonnell and the Cornell Trust are subject to personal jurisdiction under CPLR 302(a)(1). Pagnotta states that while the Cornell Trust opened the SSB account in New Jersey, no one expected any material events concerning the account would take place in New Jersey (except payouts), since the assets in the account were transferred to and located in New York. Specifically, the account's assets included the Allmerica shares, which were held for the benefit of SSB by third party vendor Depositary Trust Company ("DTC"), whose offices are located in New York and were sold on the New York Stock Exchange. Additionally, the SSB brokerage account used New York banks, including a Citibank. Finally, the trade confirmations on the Allmerica shares and the account statements summarizing the activity in the account were generated by SSB at its New York offices.

SSB also submits the declaration of Jeffrey R. Zuckerman, Esq., Director and Deputy

---

6. *See also Morongo Band of Mission Indians v. California State Bd. of Equalization,* 858 F.2d 1376, 1384 (9th Cir.1988) ("In an interpleader action, as in an action for declaratory relief the plaintiff seeks an adjudication of claims that the defendants threaten to assert against the plaintiff. Whether the action is styled as one for interpleader or for declaratory relief, the cause of action litigated is not that of the plaintiff but that of the defendants. Federal jurisdiction over both types of action is proper if the cause(s) of action anticipated by the plaintiff's suit would arise under federal law."); *General Railway Signal Co. v. Corcoran,* 921 F.2d 700, 706 n. 6 (7th Cir. 1991).

General Counsel for SSB, whose office is located in New York City. He states that, on March 23, 2001, after the account was frozen, Lawrence Bathgate, II, Esq., who represents defendant McDonnell in this interpleader action, telephoned Zuckerman in New York, identified himself as counsel for the Cornell Trust and discussed the restrictions placed on the account. Bathgate undertook to provide Zuckerman with documentation regarding the absence of Brennan, Sr.'s ownership interest in the account and ultimately, to have SSB remove the restrictions that Zuckerman had put in place, and, on March 27, Bathgate sent such documentation to New York. Bathgate further asked SSB to send written responses (necessarily from New York) to the materials he had provided concerning Brennan, Sr.

McDonnell and the Cornell Trust do not contest the facts listed above and assert only that McDonnell is a citizen of New Jersey, has never been employed in New York and owns no real property in New York. The Trust, they note further, is a New Jersey trust and the Trustee opened the account at SSB's office in Red Bank, New Jersey. McDonnell and the Trust fail to address the reach of CPLR § 302(a)(1), advancing only the argument that minimum contacts do not exist which would subject these defendants to personal jurisdiction in this District. I conclude that jurisdiction is appropriate under the New York long-arm statute and turn to the issue of whether such an assertion is constitutional.

 A state may only exercise personal jurisdiction over a non-resident defendant with whom it has certain "minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Fort Knox Music, Inc. v. Baptiste*, 203 F.3d 193, 196 (2d

Cir.2000) (internal marks omitted). I must consider the relationship among the defendant, the forum and the litigation in determining whether minimum contacts exist. *See id.* SSB must show that its claim arises out of or relates to McDonnell's contacts with New York to establish the minimum contacts necessary to justify this "specific" [7] assertion of long-arm jurisdiction. *See id.* at 243. SSB must, furthermore, show that the Trust "purposefully availed" itself of the privilege of doing business in New York and that it could foresee being "haled into court" in this forum. *Id.* (internal marks omitted).

Assertion of jurisdiction over McDonnell and the Cornell Trust comports with the requisites of due process. Although McDonnell opened the account in New Jersey, he, and his counsel, were clearly aware that the Allmerica shares were being traded on the New York Stock Exchange, that the Trust's initiation of the stock transaction resulting in the liquidation of the shares and subsequent deposit into the SSB account (would be) and was effectuated in New York (not New Jersey) and that all administrative details, including back-up documents such as trade confirmations, deposit slips, account statements, etc., would be prepared by SSB and DTC and flow from New York. *See Sterling Nat'l Bank & Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870, 873–874 (2d Cir.1975); *Correspondent Servs. Corp. v. J.V.W. Investments Ltd.*, 2000 WL 1718785, at *3 (S.D.N.Y.2000) (Sweet, J.). Indeed, it is not unfair to say that the opening of the account with SSB in New Jersey was purely fortuitous because McDonnell had to be aware that every other fact relating to this transaction and the sequelae would occur in New York. Further, Bathgate, on behalf of the Trust, purposefully reached into SSB's offices in New York in an attempt to extract

7. As the Second Circuit, collecting Supreme Court authority, noted in *Metropolitan Life*, "Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metropolitan Life v. Robertson–Ceco Corp.*, 84 F.3d 560, 567–568 (2d Cir.1996) (internal marks omitted). The instant case involves specific jurisdiction because the attempt to exercise jurisdiction over the defendants arises out of and relates to the Trust's maintenance of assets and repeated correspondence with SSB in New York, and not allegations of a continued course of conduct or general business presence in the forum which would involve general jurisdiction. In the latter case, a defendant is said to be present for jurisdictional purposes.

a benefit from the forum. He repeatedly corresponded with SSB's Deputy General Counsel in an effort to (as stated in his letter of March 27, 2001) "unfreeze" the assets in the brokerage account. He also, as previously observed, requested that SSB's attorneys in New York respond to his inquiries in writing. Thus, it was entirely foreseeable to him, McDonnell and the Cornell Trust that litigation might arise in this forum and, as a result, they would be haled into this Court. *See, e.g., Black River Assocs. v. Newman,* 218 A.D.2d 273, 276–77, 637 N.Y.S.2d 880 (4th Dep't 1996).

 The due process inquiry also requires an examination, beyond minimum contacts, of whether an assertion of jurisdiction over a non-resident defendant comports with traditional notions of fair play and substantial justice—that is, whether the exercise of jurisdiction is reasonable under the circumstances of this case. *See Wiwa v. Royal Dutch Petroleum Co.,* 226 F.3d 88, 99 (2d Cir.2000) (internal marks omitted). Whether it is reasonable to exercise jurisdiction in a particular case depends, among other things, on: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *See Chaiken v. VV Publ'g Corp.,* 119 F.3d 1018, 1028 (2d Cir.1997), *cert. denied,* 522 U.S. 1149, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998). Mindful of these considerations, I conclude that an exercise of jurisdiction over the Cornell Trust is wholly reasonable because it will not impose a hardship on the defendants in adjacent New Jersey. SSB, in possession of most of the relevant evidence, is in New York and dismissing or transferring this case to another judge would be highly inefficient considering this Court's familiarity with the Brennan, Sr. enforcement action and being the issuer of the order of April 2000. McDonnell and the Trust are therefore subject to personal jurisdiction in this forum.[8]

 Finally, McDonnell and the Cornell Trust contend that this action should be dismissed for insufficiency of service of process pursuant to Rule 12(b)(4). This argument is without merit because it is undisputed that SSB served all the papers in this action, including the verified complaint for interpleader, the memorandum of law in support of plaintiff's order to show cause, summonses and the order to show cause containing the Court's directive to serve all relevant papers on counsel for the Trust. Indeed, it cannot be disputed that the Trust had notice of this action because counsel for the Trust appeared for argument on the order to show cause on April 20, 2001, and took the position that this action should be transferred to United States District Court for the District of New Jersey or the United States Bankruptcy Court for the District of New Jersey. The instant motions were filed after the hearing. Bathgate, moreover, has never taken the position that he is unauthorized to accept process on behalf of his client (for whom he was actively attempting to obtain relief from SSB's freeze on the brokerage account in the same period during which this action was filed). To hold otherwise would be elevating form over substance.

Accordingly, defendants' motions are denied and it is further:

1. ORDERED that all those claiming an interest in the SSB account enter this action pursuant to Fed.R.Civ.P. 22 in order to settle any claims or potential claims to the assets held therein;[9] it is further

2. ORDERED that plaintiff SSB submit a reasonably detailed accounting of its

---

**8.** Based upon the same facts set forth in the discussion of personal jurisdiction, I similarly deny the Trust's motion to dismiss or transfer pursuant to Rule 12(b)(3) for improper venue. In a federal question action, venue is proper in any "[j]udicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

**9.** The SEC has already filed an answer in this action.

legal fees for the Court's further consideration of plaintiff's application for an award of attorney's fees.

SSB or any other party may wish to submit a more formal written order on notice. Leave is granted in such event.